IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, 2201 Wisconsin Ave. NW, Suite 200 Washington, DC 20007, <br><br> Plaintiff <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, 20 Massachusetts Ave N.W. Washington, D.C. 20529 <br><br> U.S. DEPARTMENT OF STATE 600 19th Street, NW Washington, DC 20024 <br><br> Defendants. | Civil Action No. 1:22-cv-3634 |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Plaintiff National Immigration Project of the National Lawyers Guild ("NIPNLG") seeks records from Defendants U.S. Citizenship and Immigration Services ("USCIS") and the U.S. Department of State ("State") relating to their application of the terrorism-related inadmissibility grounds ("TRIG") and their processing of immigration benefits from noncitizens of predominantly Muslim countries.

2. Specifically, Plaintiff's requested records include data about the application of 8 U.S.C. § 1182(a)(3)(B), the inadmissibly grounds applied to individuals who have allegedly engaged in terrorist activity, and data on the revocation of Presidential Proclamations 9645 ("Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats") and 9983 ("Improving Enhanced Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats").

3. Defendants' policies targeting noncitizens from predominantly Muslim countries are a matter of significant public concern and have been the subject of numerous lawsuits,[1] advocacy reports,[2] news reporting,[3] and scholarly interest.[4] Disclosure of the requested information will contribute significantly to the public's understanding of the long-term effects of the previous administrations' executive orders designed to curtail the immigration of Muslims

---

[1] *See*, *e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392 (2018) (addressing legality of Trump administration's Muslim ban); *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635 (4th Cir. 2020) (same); *Darweesh v. Trump*, 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017) (same); *Wagafe v. Trump*, No. C17-0094-RAJ, 2017 WL 2671254 (W.D. Wash. June 21, 2017) (addressing the Controlled Application Review and Resolution Program (CARRP), a program allegedly used by USCIS to target certain Muslim noncitizens).

[2] *See*, *e.g.*, Jennie Pasquarella, *Muslims Need Not Apply: How USCIS Secretly Mandates Discriminatory Delay and Denial of Citizenship and Immigration Benefits to Aspiring Americans*, ACLU of Southern California (2013); Human Rights First, *Denial and Delay: The Impact of the Immigration Law's "Terrorism Bars" on Asylum Seekers and Refugees in the United States* (2009).

[3] *See*, *e.g.*, Somini Sengupta, *Loose Definition of Terrorism Upends a Syrian Asylum Seeker's Life*, N.Y. Times (Jun. 23, 2017), nyti.ms/3V3LtEg; Isa Gutierrez, *'Psychological Trauma and Stress': The Lasting Impact of the 'Muslim Ban*,*'* NBC News (Jan. 20, 2021), https://nbcnews.to/3rApZkV.

[4] *See*, *e.g.*, Faiza W. Sayed, *Terrorism and the Inherent Right to Self-Defense in Immigration Law*, 109 Cal. L. Rev. 615 (2021); Engy Abdelkader, Judy Chu, Elica Vafaie, Khaled Beydoun, *The Muslim Ban Revisited: Trump v. Hawaii Two Years Later*, 44 Harbinger 248 (2020); Justin A. Fraterman, *Criminalizing Humanitarian Relief: Are U.S. Material Support for Terrorism Laws Compatible with International Humanitarian Law?*, 46 N.Y.U. J. Int'l L. & Pol. 399 (2014).

into the United States and the application of the TRIG bars. The records requested will provide information that will shed light on these issues.

## Jurisdiction and Venue

4. This Court has subject-matter jurisdiction and personal jurisdiction under 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

5. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## Parties

6. Plaintiff NIPNLG is a national non-profit that provides technical and litigation support to immigrant communities, legal practitioners, and advocates seeking to advance the rights of noncitizens.  NIPNLG provides training to the bar on immigration consequences of criminal conduct, is the author of four treatises on immigration law published by Thomson Reuters, and pursues litigation that aims to extend the rights of all noncitizens in the United States, regardless of immigration status.  In addition, NIPNLG staff present, and regularly publish practice advisories on immigration law topics, which are disseminated to its members as well as to a large public audience through its website.  NIPNLG also regularly publishes FOIA disclosures to the media and the public through its website.

7. Defendant USCIS is an agency within the meaning of 5 U.S.C. § 552(f).  USCIS has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

8. Defendant State is an agency within the meaning of 5 U.S.C. § 552(f).  State has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

**Statutory Framework**

9. FOIA is designed to promote transparency and open government by providing any person a right to request federal agency records. 5 U.S.C. § 552(a)(3)(A).

10. The FOIA statute imposes strict deadlines on agencies to provide a response to FOIA requests. 5 U.S.C. § 552(a)(6)(A).

11. Agencies must comply with a FOIA request by issuing a determination within twenty working days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i).

12. Agencies have the burden "to act in good faith and exercise due diligence to make records available as quickly as possible, or invoke an exemption, and to improve their records management systems to enable prompt responses without routine judicial involvement." *Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 783 (D.C. Cir. 2018).

13. An agency is entitled to a ten-day extension of the twenty working day timeline if it provides a written notice to the requestor explaining that unusual circumstances warrant additional time. 5 U.S.C. § 552(a)(6)(B).

14. An agency determination under FOIA "must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 771 F.3d 180, 186 (D.C. Cir. 2013). An acknowledgement of receipt noting that the request is being processing is not a determination under the FOIA statute because "it is not enough that, within the relevant time period, the agency simply decide to later decide." *Id*.

15.     An agency must timely notify requestors of its determination and the reasons for it and, in the case of an adverse determination, the right to administratively appeal. 5 U.S.C. § 552(a)(6)(B)(ii).

16.     FOIA requestors are deemed to have exhausted their administrative remedies if the agency does not comply with the statute's time limits. 5 U.S.C. § 552(a)(6)(C)(i).

## Factual Background

*USCIS FOIA Request*

17.     By email and letter dated June 06, 2022, NIPNLG submitted a FOIA request to USCIS seeking the following:

All records,[5] including statistical aggregate data, reflecting the following:

1- The number of adjustment of status applications USCIS denied pursuant to Section 212(a)(3)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(3)(B) between January 1, 2016 and the date that data production for this FOIA request commences.

2- The applicant country of origin for all adjustment of status applications USCIS denied pursuant to Section 212(a)(3)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(3)(B) between January 1, 2016 and the date that data production for this FOIA request commences.

3- Anonymized, individual-level data on every adjustment of status application filed by nationals of Eritrea, Iraq, Iran, India, Libya, Pakistan, Somalia, Sudan, Syria, and Yemen between January 1, 2016 and the date that data production for this FOIA request commences.

   a. For each application, we request the following data:
      i. Country of origin;
      ii. Outcome of application;
      iii. Reason for denial noted, where applicable;

---

[5] In this request, "records" shall refer to, but not be limited to, all worksheets, coversheets, forms, emails, written documents, database entries, post-it notes, logs, metadata, files, correspondence, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training manuals, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications, and/or video tapes.

    iv. Gender;
    v. Race or ethnicity; and
    vi. Age.

NIPNLG requested a fee waiver. A copy of Plaintiff's June 6, 2022, FOIA request to USCIS is attached as Exhibit A.

  18. By letter dated June 28, 2022, USCIS acknowledged receipt of the FOIA request on June 7, 2022. USCIS granted the fee waiver request and invoked the ten-day extension due to unusual circumstances. A copy of USCIS's acknowledgment is attached as Exhibit B.

  19. More than 30 working days have passed since USCIS received the FOIA request. USCIS has not yet issued any determination on Plaintiff's FOIA request.

  20. Because USCIS has failed to timely respond to Plaintiff's FOIA request, Plaintiff has constructively exhausted its administrative remedies.

***State FOIA Request***

  21. By letter dated June 07, 2022, NIPNLG submitted a FOIA request to State seeking the following:

All records,[6] including statistical aggregate data, reflecting the following:

1. The number of visa applications (both immigrant and non-immigrant visas) filed by nationals of Eritrea, Iran, Kyrgyzstan, Libya, Myanmar, Nigeria, Somalia, Sudan, Syria, Tanzania, and Yemen per month between February 1, 2016 and January 1, 2022.

2. The number of visa applications (both immigrant and non-immigrant visas) denied to nationals of Eritrea, Iran, Kyrgyzstan, Libya, Myanmar, Nigeria, Somalia, Sudan, Syria, Tanzania, and Yemen per month between February 1, 2016 and January 1, 2022.
    a. For each of these applications, we request anonymized, individual-level data on every application reflecting:
        i. the reason for denial noted;

---

[6] In this request, "records" shall refer to, but not be limited to, all worksheets, coversheets, forms, emails, written documents, database entries, post-it notes, logs, metadata, files, correspondence, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training manuals, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications, and/or video tapes.

    ii. the consulate where the application was submitted;
    iii. the number and date of prior visa applications filed by the applicant;
    iv. the number of prior visas granted; and
    v. the age and gender of the applicant.

3. The number of visa applications (both immigrant and non-immigrant visas) denied to nationals of Eritrea, Iran, Kyrgyzstan, Libya, Myanmar, Nigeria, Somalia, Sudan, Syria, Tanzania and Yemen per month after February 1, 2021 who had previously been denied a visa pursuant presidential proclamations 9645 and 9983.

4. The number of visas revoked by nationals of Eritrea, Iran, Kyrgyzstan, Libya, Myanmar, Nigeria, Somalia, Sudan, Syria, Tanzania, and Yemen per month between February 1, 2016 and January 1, 2022.

5. The number of visas denied pursuant to Section 212(a)(3)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(3)(B) between January 1, 2016 and January 1, 2022.

6. The number of visas denied to nationals of Eritrea, Iran, Kyrgyzstan, Libya, Myanmar, Nigeria, Somalia, Sudan, Syria, Tanzania, and Yemen pursuant to Section 212(a)(3)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(3)(B) between January 1, 2016 and January 1, 2022.

7. Records identifying policies and procedures, training materials, and communications regarding the implementation of Presidential Proclamation 10141 titled "Ending Discriminatory Bans on Entry to the United States" and issued on January 20, 2021.

NIPNLG requested a fee waiver. A copy of Plaintiff's June 7, 2022 FOIA request to State is attached as Exhibit C.

22. By letter dated June 13, 2022, State acknowledged receipt of the FOIA request on June 10, 2022. State invoked the ten-day extension due to unusual circumstances. A copy of USCIS's acknowledgment is attached as Exhibit D.

23. More than 30 working days have passed since State received the FOIA request. State has not yet issued any determination on Plaintiff's FOIA request.

24. Because State has failed to timely respond to Plaintiff's FOIA request, Plaintiff has constructively exhausted its administrative remedies.

## Plaintiff's Claims for Relief

### Wrongful Withholding of Records Responsive to Plaintiff's FOIA Request

25. Plaintiff repeats and re-alleges the foregoing paragraphs.

26. In its June 06, 2022, Plaintiff properly asked for records within the possession, custody, and control of USCIS.

27. In its June 07, 2022, Plaintiff properly asked for records within the possession, custody, and control of State.

28. Defendants have failed to conduct a timely adequate search in response to Plaintiff's FOIA requests.

29. Defendants are wrongfully withholding records responsive to Plaintiff's FOIA requests.

30. By failing to timely release all requested records in full to Plaintiff, Defendants are in violation of FOIA.

31. Plaintiff is therefore entitled to injunctive and declaratory relief requiring immediate processing and disclosure of the requested records.

### Requested Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendants to immediately and fully process Plaintiff's FOIA requests and disclose all non-exempt records to Plaintiff;

(2) Issue a declaration that Plaintiff is entitled to immediate processing and disclosure of the requested records;

(3) Provide for expeditious proceedings in this action;

(4) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(6) Grant such other relief as the Court may deem just and proper.

Date: December 5, 2022                              Respectfully Submitted,

/s/ Khaled Alrabe
Khaled Alrabe
National Immigration Project of the
National Lawyers Guild
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
Tel: (202) 656-4788
khaled@nipnlg.org